UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

STEEL SUPPLY & ENGINEERING
COMPANY,

        Plaintiff,

                                  File No. 1:13-CV-1034

v.

                                  HON. ROBERT HOLMES BELL

ILLINOIS NATIONAL INSURANCE
COMPANY,

        Defendant.

_____/

## OPINION

      This is an action for declaratory judgment removed to this Court from the Kent County Circuit Court pursuant to 28 U.S.C. § 1441. The matter is presently before the Court on the parties' cross-motions for summary judgment. (Def.'s Mot., ECF No. 16; Pl.'s Mot., ECF No. 19.) Each party has filed a Response to the other's motion, and a Reply.

      Plaintiff's underlying action seeks declaratory judgment that Defendant has breached its duty to defend and duty to indemnify Plaintiff in separate litigation against which Plaintiff is defending itself in Indiana state court. At issue in the cross motions is whether the subject matter of the Indiana litigation alleges facts that fall within Plaintiff's policy with Defendant. For the reasons that follow, the Court holds that it does not.

## I.

      Plaintiff contracted with non-party the City of Carmel, Indiana, (the City) to supply and erect steel structures as part of a larger project: the construction of a performing arts center. In June 2009,

the City discovered defects in the structural steel, in the type of bolts used to connect structural components, in the substitution of an inferior part for one called for in the drawings, and a subsequent deformation of a component used to support a dome-shaped "Palladium" structure made of pre-cast roof panels.

The City sued Plaintiff in June 2011. The City alleges in the Indiana litigation that as a result of the defects in the steel, the structure of the project was compromised, such that the structure itself was unsafe. As a result of the defects, the City alleges that it was: forced to hire experts to evaluate the defects and make a remediation plan; required to perform the remediations to make the structure safe; forced to delay completion of the project; and forced to compensate other contractors for the cost of the delays. (*See generally* 2nd Am. Compl. ¶¶ 34–78.)

Defendant initially agreed to defend Plaintiff in the Indiana litigation, under a reservation of rights. After further investigation, Defendant denied coverage for the claims and withdrew its defense and indemnity. Defendant denied coverage because, in its opinion, the damages claimed by the City are not an "occurrence" of "property damage" as defined in the policy.

Effective at the time of the relevant underlying events was a Commercial General Liability Insurance Policy (the Policy) issued to Plaintiff by Defendant. The parties do not dispute that the Policy, in the relevant portion, obligated Defendant to provide coverage, and to indemnify and defend Plaintiff as relevant here, for damages due to "property damage" if such property damage fell within the scope of the policy. The property damage would only be covered if it were the result of an "occurrence," defined in the policy as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." (Policy, Compl. Ex. 1, ECF No. 1-1.) The dispute in this case is whether the damage for which Plaintiff seeks defense and indemnity is the result of an occurrence.

2

## II.

### A.     Motion Standards

The Federal Rules of Civil Procedure require the Court to grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In evaluating a motion for summary judgment the Court must look beyond the pleadings and assess the proof to determine whether there is a genuine need for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). When the moving party will not carry the burden of proof at trial, the party must identify "those portions of pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986) (internal quotations omitted). A defendant moving for summary judgment is not required, however, to "support its motion with affidavits or other similar materials negating the opponent's claim." *Id.*

In considering a motion for summary judgment, "the district court must construe the evidence and draw all reasonable inferences in favor of the nonmoving party." *Martin v. Cincinnati Gas & Elec. Co.*, 561 F.3d 439, 443 (6th Cir. 2009) (citing *Jones v. Potter*, 488 F.3d 397, 403 (6th Cir. 2007)). Nevertheless, the mere existence of a scintilla of evidence in support of a non-movant's position is not sufficient to create a genuine issue of material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). The proper inquiry is whether the evidence is such that a reasonable jury could return a verdict for the non-moving party.  *Id.*; *see generally Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1476-80 (6th Cir. 1989). "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not

adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

The standards upon which the Court evaluates a motion for summary judgment do not change simply because the parties present cross motions. *Relford v. Lexington–Fayette Urban Cnty. Gov't*, 390 F.3d 452, 456 (6th Cir. 2004). "The fact that both parties have moved for summary judgment does not mean that the court must grant judgment as a matter of law for one side or the other; summary judgment in favor of either party is not proper if disputes remain as to material facts." *Taft Broad. Co. v. United States*, 929 F.2d 240, 248 (6th Cir.1991) (quoting *Mingus Constructors, Inc. v. United States*, 812 F.2d 1387, 1391 (Fed. Cir.1987)).

## B.    Applicable Law

Although both parties assume in their pleadings or briefs that Michigan law governs this case, because this is a diversity case presenting state-law claims, and because the events giving rise to the case took place outside of Michigan, as a threshold matter the Court must determine what law to apply. It is well-settled that a federal court sitting in diversity must apply the conflict of laws principles of the forum state to determine which state's substantive law to apply. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496–97 (1941). Michigan courts apply Michigan law unless a "rational reason" exists to apply the law of another state. *Sutherland v. Kennington Truck Serv., Ltd.*, 562 N.W.2d 466, 471 (Mich. 1997). To determine if a rational reason exists, a court must undertake a two-step analysis: (1) does another state have an interest in having its law applied, and if so; (2) do Michigan's interests mandate that Michigan law apply in spite of the foreign state's interest. *Id.* (citing *Olmstead v. Anderson*, 400 N.W.2d 292, 304 (Mich. 1987)). If no other state has an interest, the presumption that Michigan law applies cannot be overcome. *Sutherland*, 562 N.W.2d at 471.

According to  the Michigan Supreme Court, "The injury state always has an interest in conduct within its borders, whether or not its citizens are involved." *Olmstead*, 400 N.W.2d at 304.[1] Here, although the events that precipitated the present suit occurred in Indiana, the ultimate question here is one of interpretation of an insurance policy between Michigan and Illinois corporations. Therefore, under *Olmstead*, Indiana does not have an interest in the outcome of this litigation. The Court holds, therefore, that Michigan law applies.

Michigan's choice of law principles with regard to contract disputes support this conclusion. *See Mill's Pride, Inc. v. Cont'l Ins. Co.*, 300 F.3d 701, 704–05 (6th Cir. 2002) (citing *Chrysler Corp. v. Skyline Indus. Servs., Inc.*, 528 N.W.2d 698 (Mich. 1995)) (noting that Michigan uses a modified *lex loci contractus* rule that takes into account the intent of the parties and other policy considerations).

**C.      Duty to Defend**

Under Michigan law, it is well-settled that the duty to defend is broader than the duty to indemnify. *Citizens Ins. Co. v. Pro-Seal Serv Grp., Inc.*, 710 N.W.2d 547, 551 (Mich. Ct. App. 2005), *rev'd on other grounds*, 730 N.W.2d 682 (Mich. 2007); *Radenbaugh v. Farm Bureau Gne. Ins. Co. of Mich.*, 610 N.W.2d 272, 275 (Mich. Ct. App. 2000). "The duty to defend is related to the duty to indemnify in that it arises only with respect to insurance afforded by the policy. If the policy does not apply, there is no duty to defend." *Am. Bumper & Mfg. Co. v. Hartford Fire Ins. Co.*, 552 N.W.2d 475, 481 (Mich. 1996). To determine if the duty to defend exists, a court must "consider the language of the insurance policy and construe its terms to find the scope of the coverage of the policy." *Citizens*, 710 N.W.2d at 551.

---

[1]*Olmstead* distinguishes between a state's interest in regulating conduct and its interest in limiting damages. If the only issue is damages and the litigants are not citizens of the state where the injury took place, that state will have no interest in the litigation. *Olmstead*, 400 N.W.2d at 304.

Whether the duty to defend is triggered depends on the allegations in the complaint filed against the insured. *Id.* An insurer, however, must look beyond the third party's allegations to determine whether coverage is possible. *Radenbaugh*, 610 N.W.2d at 275. The insurer's duty is not limited to meritorious suits and if "the allegations of a third party against the policyholder even arguably come within the policy coverage, the insurer must provide a defense." *Am. Bumper*, 550 N.W.2d at 481; *Detroit Edison Co. v. Mich. Mut. Ins. Co.*, 301 N.W.2d 832, 835 (Mich. Ct. App. 1981). "An insurer has a duty to defend, despite theories of liability asserted against any insured which are not covered under the policy, if there are any theories of recovery that fall within the policy." *Id.* (citing *Dochod v. Cent. Mut. Ins. Co.*, 264 N.W.2d 122 (Mich. Ct. App. 1978)). Doubt as to whether allegations fall within the policy must be resolved in favor of the insured. *Citizens*, 710 N.W.2d at 551.

In the present case, the alleged proximate cause of the City's damages is Plaintiff's defective workmanship both in fabricating and erecting the steel components of the City's project. The issue of contention is whether the damages the City alleges are an "occurrence" under Plaintiff's Policy with Defendant, and therefore whether Defendant owes Plaintiff a duty to defend against the City's lawsuit.

In a case where the insurance policy defined the duty to defend and an occurrence in exactly the same language as the present case, the Michigan Court of Appeals held that "defective workmanship . . ., standing alone, [is] not the result of an occurrence within the meaning of the insurance contract." *Hawkeye–Security Ins. Co. v. Vector Constr. Co.*, 460 N.W.2d 329, 334 (Mich. Ct. App. 1990). Rather, for coverage to be afforded under such a policy "the insured's faulty work product" must damage "the property of others." *Id.*

6

Both parties recognize *Hawkeye* as controlling authority, but disagree on its application. Defendant argues that *Hawkeye*'s holding compels this Court to rule in its favor because all the damages claimed in the City's complaint are for costs associated with remediation and delays caused to other parts of the construction process by Plaintiff's faulty workmanship. Plaintiff counters that "the damage caused by the alleged defects is not limited to the erected steel structure." (Pl.'s Resp. 5, ECF No. 24.) Plaintiff cites many Michigan cases that stand for the proposition that the duty to defend extends to cases where faulty workmanship causes damage to a the property of a third party. Plaintiff argues that, at the very least, the precast roof panels of the Palladium were damaged due to the allegedly defective workmanship, as evidenced by photographs and an affidavit submitted with its brief.

Plaintiff also argues in the alternative that *Hawkeye*'s holding should be reconsidered in light of new case law from the Indiana Supreme Court. (Pl.'s Br. 13 n.8, ECF No. 20 (citing *Sheeran Const. Co., Inc. v. Cont'l Cas. Co.*, 935. N.E.2d 160 (Ind. 2010).) As this Court has already held, Michigan law governs this case. *Hawkeye* articulates a policy of Michigan Courts that dates back nearly 25 years that the Supreme Court of Michigan has not sought to modify. "[F]ederal courts sitting in a diversity case are in 'a particularly poor position ... to endorse [a] fundamental policy innovation'" *Combs v. Int'l Ins. Co.*, 354 F.3d 568, 577–78 (6th Cir. 2004) (quoting *Dayton v. Peck, Stow & Wilcox Co.*, 739 F.2d 690, 694 (1st Cir. 1984)). The Court will therefore apply *Hawkeye* to the present case.

Looking to the allegations in the City's second amended complaint the Court finds that the City made the following allegations relevant to the present case:

(1)     the Palladium has a large dome with steel framing and a precast concrete roof plank system;

(2)     the City discovered rips in the structural steel that needed remediation;

(3)     the defects caused Plaintiff and the City to call into question the Project's overall structural safety and integrity;

(4)     the Project faced imminent failure because of the defects;

(5)     the City had to engage a civil engineering firm to assess the damage and form a remediation plan;

(6)     the engineering firm identified the following defects: use of improper bolts; use of improper structural elements; and flaws in the actual fabrication of steel elements

(7)     the defects required extensive remediation to make the project safe;

(8)     the remediation efforts delayed the scheduling of other contractors and caused the City financial damages; and

(9)     the civil engineering firm has discovered additional, smaller flaws in the steelwork that have required ongoing remediation.

These allegations relate solely to Plaintiff's allegedly deficient workmanship. The Court does not construe Defendant's duty under *Radenbaugh*, 610 N.W.2d at 275, to look beyond the allegations in the complaint as a duty to look to all claims a third party *could* bring against an insured. Rather, the policy underlying a broad duty to defend is to require insurers to see if, under the facts as alleged in the complaint, *any* theory of liability that would be covered under the policy could attach to the insured.

Here, Plaintiff does not dispute that the facts alleged in the complaint, by themselves, would not fall within the definition of "occurrence" under its policy, and thus would not trigger Defendant's duty to defend. Nor would any of the theories of liability alleged be an occurrence. Rather, Plaintiff

argues that facts outside the complaint—namely that the precast concrete portions of the Palladium's dome were damaged due to its faulty workmanship—are an occurrence within the meaning of the policy. However, as discussed above, just because the City *could* bring a suit that would trigger Defendant's duty to defend does not mean that it has.

The Michigan cases defining the contours of an insurer's duty to defend require the insurer to ascertain if there are theories of liability supported by the facts alleged in the complaint, but not specifically pled. Here, as argued by Defendant, the complaint alleges no facts that support a theory of recovery that would trigger its duty to defend. Summary judgment in Defendant's favor will therefore be granted.

Plaintiff presents additional arguments in its motion, assuming that there is a duty to defend, as to why none of the policy exclusions apply. In light of the Court's holding as to coverage, however, these arguments are moot.

## III.

For the foregoing reasons, the Court will grant Defendant's Motion for Summary Judgment and deny Plaintiff's Motion for Partial Summary Judgment.

The Court will issue an Order and Judgment consistent with this Opinion.


Dated: <u>August 18, 2014</u>                     <u>/s/ Robert Holmes Bell</u>
                                        ROBERT HOLMES BELL
                                        UNITED STATES DISTRICT JUDGE